# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BARRY BERNAU,

    Plaintiff,

v.

ARCHITECTURAL STAINLESS, INC.,

    Defendant.

_____/

Case No. 17-cv-10766

Hon. Gershwin A. Drain

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS [#4], CANCELING HEARING AND SETTING SCHEDULING CONFERENCE

### I. INTRODUCTION

On March 9, 2017, Plaintiff Barry Bernau filed the instant action against Defendant Architectural Stainless, Inc. (ASI). Plaintiff alleges in his complaint that Defendant violated the Americans with Disability Act (ADA), 42 U.S.C. § 12101, and Michigan's Workers Disability Compensation Act (WDCA), MICH. COMP. LAWS § 418.301. Presently before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant argues that the Plaintiff failed to properly state a claim upon which relief can be granted. This matter is fully briefed and upon review of the parties' submissions, the Court finds that oral argument will not aid in the disposition of this matter. Accordingly, the

hearing is canceled and the Court will decide the matter on the submitted briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

For the reasons discussed herein, the Court will **DENY** Defendant's motion [#4].

## II. FACTUAL BACKGROUND

Defendant manufactures stainless steel in Macomb Township, Michigan. Dkt. No. 1, p. 3 (Pg. ID No. 3). Management hired Plaintiff as a shop helper around June 8, 2015. *Id*. As a shop helper, Plaintiff's primary duties included assisting co-workers with their tasks, sweeping floors, taking out garbage, and miscellaneous tasks given by one of the part-owners. *Id*.

Three brothers—Carlo, Bruno, and Nick Fucciarelli—co-own Defendant Company. *Id*. On July 20, 2015, Carlo instructed Plaintiff to operate a press brake machine used for bending sheet and plate metal. *Id*. at 3–4. While operating the press brake, the machine amputated part of Plaintiff's left index finger. *Id*. at 4. With no first-aid equipment available at Defendant's facility, Plaintiff covered his wounds in an oily tourniquet and was rushed to the hospital. *Id*.

On July 22, 2015, Plaintiff returned to the emergency room because his finger began to turn black and he felt ill. *Id*. On July 24, 2015, Plaintiff was hospitalized for the weekend due to further complications from the injury. *Id*. On July 27, 2015, Plaintiff had surgery in order to remove his now gangrenous

fingertip and replace it with a skin graft from his left leg. *Id*. The next day, Defendant submitted an OCR 100 form to the Workers' Compensation Agency and the Agency approved Plaintiff for Workers' Compensation. *Id*. at 4–5.

On August 7, 2015, Plaintiff returned to Defendant's facility with a doctor's note clearing him to work with restrictions. *Id*. at 5. At this time, Carlo did not allow Plaintiff to return to work and instead sent him home. *Id*.

In November 2015, Plaintiff underwent another surgery to pin his index finger to his palm as a skin graft. *Id*. at 6. A few weeks later in December, Plaintiff then had an ultimately unsuccessful surgery to remove the index finger from his palm. *Id*. Later that month, Defendant did not invite Plaintiff to the company Christmas party to which all other employees were invited. *Id*.

On January 7, 2016, Plaintiff returned to work with a doctor's note clearing him to work without restrictions. *Id*. During this meeting, Bruno pulled Plaintiff aside and reprimanded him, claiming, "no one has ever been hurt on those machines!" *Id*. Bruno later complained to another employee that Plaintiff's finger had cost the company $65,000. *Id*.

The following week, Plaintiff returned to work and Carlo again instructed him to use the press brake machine. *Id*. at 7. While operating the machine, the press brushed up against Plaintiff's finger triggering him to pull his hand back quickly and drop the piece of metal he was working with. *Id*. Upon seeing this,

Carlo said to Plaintiff, "You know why you dropped it? You scared, you're chicken shit." *Id*. Later in January, Carlo's son, also an employee of Defendant, shot Plaintiff in the arm with a stud inserted into an air hose, leaving Plaintiff bloodied. *Id*. However, Carlo merely asked his son to apologize and did not otherwise discipline him. *Id*.

Additionally, Plaintiff alleges Carlo consistently demeaned him in front of his co-workers after the injury by referring to him as a "shitty guy" and an "epileptic." *Id*. Finally, Plaintiff claims that Defendant provides its employees with health insurance after working for 90 days, but never offered it to Plaintiff. *Id*. at 7–8.

In March 2016, Plaintiff took a leave of absence to have two additional surgeries on his injured finger. *Id*. Later that month, Plaintiff was hospitalized for an infection in his injured hand. *Id*. When he returned to work in April 2016, Carlo demanded that Plaintiff "get the f*** out of here and take your trailer with you!" *Id*.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive this motion to dismiss, a complaint must comply with the pleading requirements provided by Federal Rule of Civil Procedure 8(a). *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard, a complaint must include sufficient factual allegations to "state a claim to relief that is plausible on its face" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court's plausibility determination will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Upon reviewing a Rule 12(b)(6) motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the Court need not accept legal conclusions disguised as factual allegations when ruling on the motion. *See Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

Defendant challenges whether Plaintiff filed a complaint sufficient to survive a Rule 12(b)(6) motion. Defendant's motion applies to both Plaintiff's ADA claim and his WDCA claim.

**A. Violation of the Americans with Disabilities Act**

The first issue regards Plaintiff's claim for failure to provide a reasonable accommodation in violation of the ADA, 42 U.S.C. § 12112(A). This failure constitutes actionable discrimination if it includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise

-5-

qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case for failure to accommodate, a plaintiff must show:

> (1) [he] is disabled within the meaning of the Act; (2) [he] is otherwise qualified for the position, with or without reasonable accommodation; (3) [his] employer knew or had reason to know about [his] disability; (4) [he] requested an accommodation; and (5) the employer failed to provide the necessary accommodation.

*Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011).

### 1. Whether Plaintiff Properly Pled a Disability

The primary element in contention is whether Plaintiff sufficiently pled a disability within the meaning of the statute. The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Further statutory guidance shows that "major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Plaintiff pleads facts indicating he suffered a very serious injury that required numerous surgical procedures to treat. Conversely, Defendant argues that Plaintiff does not articulate any major life activities that were substantially limited, and thus cannot qualify as disabled. Viewing the complaint in the light most

favorable to the Plaintiff, the facts pled invite a reasonable inference that Plaintiff's injury substantially limited at least one of the major life events identified in the statute. For example, Plaintiff's ability to perform manual tasks, lift, and work could plausibly be limited because he lacked full use of his injured finger and the surrounding area.

Defendant also relies upon case law distinguishable from the present case. For instance, two of the cases cited by Defendant were decided on summary judgment, which imposes a different standard than a Rule 12(b)(6) motion. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) (reviewing dismissal upon summary judgment where the respondent did not provide evidence that she was substantially limited in performing manual tasks); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444 (6th Cir. 2004) (granting summary judgment to the employer after an employee rejected reasonable accommodations, and thus was not a "qualified individual with a disability"). Due to this significant distinction, Defendant's arguments carry little weight.

Assuming Plaintiff did not plead facts indicating a disability, the statute also allows Plaintiff to plead that he was "regarded as" disabled. 42 U.S.C. § 12102(1). An employer regards an employee as disabled if they (1) mistakenly believe that the employee has a physical impairment that substantially limits one or more major life activities, or (2) mistakenly believe that an actual, non-limiting impairment

substantially limits one or more major life activities. *Ferrari v. Ford Motor Co.*, 826 F.3d 885 (6th Cir. 2016). "[A]n individual may fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001).

Plaintiff alleged that he returned to work with requested accommodations only to have Defendant send him home. Defendant argues that it is not reasonable to infer from these allegations that management believed Plaintiff to have a major life activity impaired due to the injury. However, given that Defendant prevented Plaintiff from returning to work, these allegations support an inference that Defendant regarded Plaintiff as disabled, when viewed in the light most favorable to the Plaintiff.

The ADA does not apply to "impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B). The law defines a transitory impairment as "an impairment with an actual or expected duration of 6 months or less." *Id.* Because the facts suggest that Plaintiff's doctor cleared him within 5.5 months (July 20, 2015 to January 7, 2016), Defendant asserts that the six-month duration is not satisfied and Plaintiff's disability is therefore transitory. However, Plaintiff alleges that although having been cleared for work after 5.5 months, he afterwards underwent additional

surgeries on the index finger causing him to miss a significantly greater amount of work into March 2016. The question as a matter of law remains whether these segments of time can be combined to fulfil the six-month threshold for satisfying a disability under the ADA.

Defendant relies on *White v. Interstate Distrib. Co.*, 438 Fed. App'x. 415 (6th Cir. 2011), in which the plaintiff fractured his leg and requested with a doctor recommendation two months off of work. The *White* court held that the doctor's note, which indicated anticipated restrictions of less than six months is sufficient to show that an alleged impairment was transitory and minor. *Id*. at 420. However, *White* is distinguishable from the present case on several grounds.

First, the Court must consider the difference in the severity of injuries. In the current matter, Plaintiff suffered from serious infection during the initial healing process. Plaintiff also continued to have surgeries on the injured finger well past the six-month threshold. In *White*, the plaintiff had a routine fracture in his leg, which the doctor expected to fully heal in less than two months. *Id*. This glaring requires rejection of Defendant's argument should be disregarded in a plausibility determination. Second, the issue in *White* was likewise evaluated at the summary judgment stage, which considers whether the record evidence demonstrates an issue of material fact. In the present action, the Court must accept all of Plaintiff's factual allegations as true and only consider plausibility. Ultimately, whether

Plaintiff's impairment is considered transitory would be better considered after discovery concludes.

Given the ADA analysis and relevant case law, Plaintiff pled sufficient facts for the Court to infer he either had a disability or was nonetheless regarded as having a disability.

### 2. Whether Plaintiff Properly Pled the Request for Reasonable Accommodations

The Defendant also disputes whether Plaintiff pled a proper request for a reasonable accommodation. The applicable rule states, "an ADA plaintiff bears the initial burden of proposing an accommodation and showing that accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) (internal quotations omitted).

Plaintiff alleges that when he returned to work with a doctor's note requesting accommodations, Defendant's co-owners instructed him to leave. Defendant counters that regardless of the truth of the allegations, the pleadings do not specify what accommodations the doctor's note contained and should therefore render the complaint insufficient. Although Plaintiff's complaint should have specified the requested accommodations, his failure to do so is not fatal. Defendant's argument is better suited at a later stage in the litigation when the legal standard rises above mere plausibility. Given the factual allegations, taken as

the truth, no major issues exist with the Plaintiff's pleadings regarding requesting reasonable accommodations.

## B. Violation of the Workers Disability Compensation Act

Additionally, Defendant moves to dismiss the accompanying state law claim for a violation of the WDCA. The relevant provision of the statute states:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

MICH. COMP. LAWS § 418.301(13). A prima facie case of retaliation under the WDCA requires:

> (1) that the employee asserted a right to obtain necessary medical services or actually exercised that right, (2) that the employer knew that the employee engaged in this protected conduct, (3) that the employer took an employment action adverse to the employee, and (4) that the adverse employment action and the employee's assertion or exercise of a right afforded under [MICH. COMP. LAWS §] 418.315(1) were causally connected.

*See Cuddington v. United Health Services, Inc.*, 298 Mich. App. 264, 275 (2012). Defendant asserts that Plaintiff failed to plead sufficient facts satisfying both the third and fourth elements.

### 1. Whether Plaintiff Properly Pled an Adverse Employment Action

First, the Court considers whether Plaintiff properly pled that he faced an adverse employment action. In *Wilcoxon v. Minnesota Mining & Manufacturing*

*Co.*, the Michigan Court of Appeals defined an adverse employment action as a decision that is "materially adverse in that it is more than [a] mere inconvenience or an alteration of job responsibilities'" and included that "there must be some objective basis for demonstrating that the change is adverse . . . ." 235 Mich. App. 347, 364 (1999) (internal citations and quotation marks omitted). Further, courts typically consider adverse employment actions to take the form of an ultimate employment decision such as "termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation" *White v. Burlington N. & S.F R. Co.*, 310 F.3d 443, 450 (6th Cir. 2002).

Defendant asserts that the failure to invite Plaintiff to the work Christmas Party, the verbal attacks, and the fact that Plaintiff was never offered health insurance do not amount to a claim of adverse employment action. However, regardless of whether these events do not amount to an adverse employment action, Defendant ultimately terminated Plaintiff's employment less than a year from the accident. This decision alone satisfies the element of an adverse employment action for the purposes of a Rule 12(b)(6) motion.

Defendant further argues that Plaintiff did not specify when the alleged termination took place and therefore has failed to state a claim. Nevertheless,

review of Plaintiff's complaint illustrates that Carlo told him on May 25, 2016 to "get the f*** out of here and take your trailer with you." Dkt. No. 1, p. 8 (Pg. ID No. 8). Plaintiff does not allege any further work activity between himself and Defendants after that date. *Id*. Thus, the Court can plausibly infer from his complaint that the May 25th statements constituted a termination. In conclusion, Plaintiff pled sufficient facts to show he suffered an adverse employment action.

### 2. Whether Plaintiff Properly Pled a Causal Connection

Defendant lastly asserts that Plaintiffs allegations do not establish a causal connection between the exercise of rights and the following adverse employment action. For the purposes of this case, the right exercised was collecting worker's compensation and the adverse employment action was the termination.

Given the legal standard of a motion to dismiss, Defendant's argument is largely irrelevant. Plaintiff alleged numerous facts that indicate a causal connection between the right asserted and the adverse action. Between the allegations of not allowing Plaintiff to return to work, verbal condemnation, and dialogue disfavoring and demeaning the Plaintiff, the invite of a causal inference is warranted. In addition, Plaintiff asserts that he satisfies the causal connection requirement due to the temporal proximity of the adverse actions and negative comments by Defendant's co-owners regarding his injury. Viewing Plaintiff's factual allegations

in the light most favorable to him, it is plausible that his allegations of adverse treatment were causally connected with his workers' compensation leave.

## V. CONCLUSION

For the reasons discussed herein, the Court will **DENY** the Defendant's Motion to Dismiss [#4]. The hearing set for Monday, July 17, 2017 is canceled. The Court will conduct a scheduling conference on <u>Monday, July 17, 2017 at 2:00 p.m</u>. Defendant shall file an Answer <u>no later than July 14, 2017</u>.

SO ORDERED.

Dated: June 30, 2017 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 30, 2017, by electronic and/or ordinary mail.
<u>/s/ Tanya Bankston</u>
Deputy Clerk